## Case No. 17,567.

### WHITELY et al. v. RIDDICK.

[Chase. 540.] 1

Circuit Court, D. North Carolina.    June Term, 1869.

EXECUTION SALE — APPLICATION OF PROCEEDS — —PRIOR JUDGMENT OF STATE COURT.

1. Land having been sold under execution upon a judgment of the United States circuit court, that court will not, upon motion to that effect, appropriate the proceeds to an older judgment of a state court. The holder of the older judgment should issue his execution and sell the land.

2. Semble: a purchase of land sold under an execution from the United States circuit court, does not take the land free from the lien of an older judgment of a state court.

Parker recovered a judgment for three hundred and eight dollars and thirty-four cents with interest, against Riddick & Stallings in the superior court of the state of North Carolina, for the county of Perquimans, on April 15, 1867. On this judgment a fi. fa. was issued on August 27, 1867, which was levied on September 10, 1867, "on the farm whereon Riddick lives." By this levy, under the laws of North Carolina, Parker acquired a lien on the lands so levied on. No sale having been made on this execution, on October 24, 1867, a venditioni exponas was issued returnable to the spring term of 1868, of the superior court of Perquimans, but just about that time, the commanding officer of "Military District Number Two," as North Carolina was then known to the federal military authorities, issued an order known as "Military Order No. 10," prohibiting sales on executions out of the courts of North Carolina, and staying proceedings for the collection of debts to the extent in said order set forth. The sheriff of Perquimans accordingly returned his writ as stayed by military order No. 10. After this judgment, levy, and issue of the venditioni exponas, Whitely, Stone & Co. recovered judgment at the November term of the court against Riddick for the sum of nine hundred and sixteen dollars and twenty-nine cents, interest and costs. On this judgment a fi. fa. was issued and levied January 13, 1868, on the same tract covered by Parker's levy of September 10, 1867. Under the levy the land was sold, and bought by the plaintiffs. On the return of the writ to this court with the proceeds of sale, Parker appeared and moved the court to order the money in the hands of the marshal realized under Whitely, Stone & Co.'s execution, to be paid over to him, because, as he contended, he had the prior lien, which he was prevented from asserting by the military authority of the United States, while the plaintiffs were allowed to go on and sell the property under their junior lien.

1 [Reported by Bradley T. Johnson, Esq., and here reprinted by permission.]

W. H. N. Smith, for Parker.

In Harbin v. Carson, 4 Dev. & B. 388, it is held that after a sale under a fieri facias, the land may be sold under a venditioni exponas issuing upon an attachment, the lien whereof overreached that of the fi. fa., and the purchasers at the last sale acquired title. This, however, is overruled, and the contrary declared in McMillan v. Parsons, 7 Jones [N. C.] 163. The contest must be as to the disposition of the money, as the first sale transfers the title.

In case of several executions from different courts, and a sale under a junior execution, the title passes, and the plaintiff in the senior execution must look to the proceeds of sale, by a rule for their application to his debt. Jones v. Judkins, 4 Dev. & B. 454.

Rogers & Bachelor, for Whitely, Stone & Co.

CHASE, Circuit Justice. This is a motion to appropriate money made by the sale of land under an execution issued from this court, to the satisfaction of a judgment rendered in a state court, and having a prior lien upon the land.

Whitely, Stone & Co. recovered a judgment at the November term, 1867, of the circuit court for the district of North Carolina, for nine hundred and sixteen dollars and twenty-nine cents, with three hundred and thirty-six dollars and nine cents damages, and forty-three dollars and ninety-nine cents costs, with interest from November 25, 1867.

Upon this judgment a fi. fa. was issued, returnable June 7, 1868; which was returned with the following endorsements, made by the deputy of the marshal: "Levied on one hundred acres of land, more or less, adjoining the land of F. H. Russell and Solomon Eason, and lying on Perquimans river swamp, it being the home tract of said Riddick, one hundred and fifty acres woodland, more or less, lying on the Dismal swamp, January 13, 1868."

The first-mentioned tract of land, in the said levy, was bid off by J. W. Albertson, attorney for Whitely, Stone & Co. for four hundred and forty-five dollars; the second by the same for fifty dollars, making in the whole four hundred and ninety-five dollars. The levy also embraced some chattel property returned not sold for want of bidders.

Prior to this proceeding, at the spring term of the superior court of the state of North Carolina, for Perquimans county, James H. Parker had recovered a judgment against Willis D. Riddick and James W. Stallings for three hundred and eight dollars and thirty-four cents, with interest from January 29, 1861, and four per cent. additional interest on the principal, from August 10, 1861, to April 15, 1867 (the date of the judgment), and costs.

On this judgment a fi. fa. was issued on August 27, and was levied September 10,

1867, "on the farm whereon W. D. Riddick lives, adjoining lands of E. N. Riddick, and also the store of W. D. Riddick."

No sale was made under this execution, and on October 24, 1867, a venditioni exponas was issued, returnable at the spring term of 1868 of the superior court, and was returned "no sale on account of military order No. 10."

It is agreed that the land levied upon under this judgment was the home tract levied upon under the judgment of this court. Upon this statement, it is clear that the Parker judgment is the older and better lien upon the land.

The only question is whether in this court, upon motion, an order can be made appropriating the proceeds of sale under the junior judgment to the satisfaction of the elder lien.

It is not doubted that, if both judgments had been rendered in the same court, the order suggested might be made.

The court, having control of its own process, might make the necessary order distributing the money, and protecting the rights of all parties by the requisite entries. But we do not see how this can be done in a court of the United States on a motion for appropriation to a judgment of a state court.

It is suggested that the order for the appropriation asked for might be made conditionally upon the production of evidence of satisfaction of the judgment in the state court. But it is obvious that satisfaction in the state court must depend upon the action of that court. In the particular case before us, no difficulty might arise or harm ensue. But the principle, if adopted and acted upon, of determining upon motion in a national court upon rights acquired in a state court, could hardly fail of embarrassing results in practice.

It is enough for the present case that there seems to be no recognized rule of law which requires one court to give effect, in this way, to the judgments and decrees of another; and that no case is produced in support of the motion addressed to us.

It is argued only that the sale, on the circuit court judgment, will carry the title, and so defeat the lien of the state court judgment by taking from under it the land on which it operates.

The case of McMillan v. Parsons, 7 Jones [N. C.] 166, is cited in support of this view. The most that can be said of that case is, that the learned chief justice questioned a judgment of the supreme court of North Carolina, asserting the opposite doctrine that a purchaser under a junior took subject to the superior lien of an elder judgment. We understand that the doctrine, stated by the chief justice, that a title to land unaffected by the older lien can be made by sale under the junior judgment, is now the recognized law and practice of this state. But we do not understand that this doctrine has ever been applied to a sale under an execution from a court of the United States. We can perceive reason for its application to sales under judgments of the same court, and, perhaps, of different courts of the same state, when an elder judgment creditor lies by, and permits a sale under the junior judgment and distribution of the proceeds. But these reasons do not seem to us applicable to judgments of courts of different sovereignties.

If the land could not be sold under the Parker judgment, and a good title made to the purchaser, a court of equity would doubtless interpose; and, all parties being before it, would marshal the liens, and distribute the proceeds of the sale made, if uncontested, according to priorities; but it seems to us, that the remedy of the plaintiff in the motion is complete at law. He has a judgment and levy, and the elder lien; and has nothing to do but to issue his vendi., and sell the land.

The motion must be overruled.